UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

THE NEW YORK STATE NURSES ASSOCIATION,

                    Plaintiff,

          v.

ALBANY MEDICAL CENTER,

                    Defendant.

Civil Action No. 1:19-cv-
01265 (FJS/CFH)

## REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Dated:  February 3, 2020

BOND, SCHOENECK & KING, PLLC

Attorneys for Defendant
22 Corporate Woods Boulevard
Suite 501
Albany, New York 12211
Tel: (518) 533-3000
Fax: (518) 533-3299

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT .................................................................................................................... 1

I.   NYSNA Fails to Plausibly Allege Facts Sufficient to State a TVPA Claim ...................... 1

II.  NYSNA Lacks Standing to Bring this Action ................................................... 7

    a.   The Plain Language of the TVPA Precludes NYSNA from
       Bringing a Claim Grounded on Associational Standing ............................... 7

    b.   NYSNA Lacks Associational Standing Because Individualized
       Proof Is Required ....................................................................................... 8

III.  NSYNA Is Not Entitled to Declaratory or Injunctive Relief as a Matter of Law ......... 12

CONCLUSION.................................................................................................................. 14

3489424.5 2/3/2020

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Andrews v. Sony/ATV Music Publ'g, LLC,
  No. 15-cv-7544, 2017 U.S. Dist. LEXIS 27034 (S.D.N.Y. Feb. 24, 2017)......................13, 14

Bano v. Union Carbide Corp.,
  361 F.3d 696 (2d Cir. 2004)..........................................................................................8, 10, 11

Bates v. Adv. USA, Inc. v. 498 Seventh, LLC,
  7 N.Y.3d 115 (2006) ............................................................................................................2

Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev. Inc.,
  448 F.3d 138 (2d Cir. 2006)................................................................................................8

Carter v. Paschall Truck Lines, Inc.,
  324 F. Supp. 3d 900 (W.D. Ky. 2018) ................................................................................4

David v. Signal Int'l, LLC,
  37 F. Supp. 3d 822 (E.D. La. 2014)....................................................................................4

Davis v. Signal Int'l, LLC,
  2012 U.S. Dist. LEXIS 114247 (E.D. La. 2012) ...................................................................9

Francis v. Apex USA, Inc.,
  406 F. Supp. 3d 1206 (W.D. Ok. 2019)...............................................................................4

Hunt v. Wash. State Apple Adver. Comm'n,
  432 U.S. 333 (1977)........................................................................................................11, 12

Javier v. Beck,
  No. 13-cv-2926, 2014 U.S. Dist. LEXIS 95594 (S.D.N.Y. July 3, 2014)...........................3, 6

LG Capital Funding LLC v. Aim Exploration, Inc.,
  No. 17-cv-3118, 2018 U.S. Dist. LEXIS 147411 (S.D.N.Y. Aug. 29, 2018)..........................5

Macolor v. Libiran,
  No. 14-cv-4555, 2016 U.S. Dist. LEXIS 405666 (S.D.N.Y. Mar. 25, 2016).......................3, 4

Mairi Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.,
  790 F. Supp. 2d 1134 (C.D. Ca. 2011) .............................................................................3, 4, 5

N.Y. Metro Area Postal Union v. Potter,
  No. 00-cv-8538, 2003 U.S Dist. LEXIS 4904 (S.D.N.Y. March 31, 2003) .........................7, 8

Paguirigan v. Prompt Nursing Empl. Agency LLC,
No. 17-cv-1302, 2019 U.S. Dist. LEXIS 165587 (E.D.N.Y. Sept. 24, 2019)
(appeal pending)..................................................................................................1, 2, 5, 13

Paguirigan v. Prompt Nursing Empl. Agency, LLC,
No. 19-cv-3494 (Jan. 21, 2020) .............................................................................1

Rent Stabilization Ass'n v. Dinkins,
5 F.3d 591 (2d Cir. 1993)..................................................................................11, 12

Saraswat v. Business Integra, Inc.,
No. 15-cv-4680, 2019 U.S. Dist. LEXIS 70054 (E.D.N.Y. Apr. 25, 2019) .............................6

Spirit Locker, Inc. v. EVO Direct, LLC,
696 F. Supp. 2d 296 (E.D.N.Y. 2010) ...................................................................2

United States v. Dann,
652 F.3d 1160 (9th Cir. 2011) .............................................................................3

United States v. Kozminski,
487 U.S. 931 (1988)...........................................................................................9

United States v. Rivera,
799 F.3d 180 (2d Cir. 2015)................................................................................8

3489424.5 2/3/2020

## PRELIMINARY STATEMENT

Defendant Albany Medical Center ("Albany Med") submits this reply memorandum of law, by and through its attorneys, Bond, Schoeneck & King, PLLC, in further support of its motion to dismiss the complaint, filed by the New York State Nurses Association ("NYSNA"), pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and in response to NYSNA's Memorandum of Law in Opposition to Albany Medical Center's Motion to Dismiss the Complaint. At the outset, it should be noted that NYSNA has abandoned any civil RICO claim it asserted, and proceeds solely on its claim pursuant to the Trafficking Victims Protection Act ("TVPA").

## ARGUMENT

### I.   NYSNA Fails to Plausibly Allege Facts Sufficient to State a TVPA Claim

NSYNA relies primarily on Paguirigan v. Prompt Nursing Empl. Agency LLC, No. 17-cv-1302, 2019 U.S. Dist. LEXIS 165587 (E.D.N.Y. Sept. 24, 2019) (appeal pending)[1] in arguing that it has plausibly stated a TVPA claim. It refers to Paguirigan as a "remarkably similar recent case," asserts that the case involved a similar liquidated damages provision, and claims that on the basic fact of the similar provision, the court granted the plaintiffs summary judgment. Pl.'s Br. at 17. This is a gross mischaracterization of Paguirigan, which presented vastly different facts than those alleged by NYSNA in the case at bar.

The contract provisions at issue in Paguirigan and the current case are markedly different. In Paguirigan, the provision included language that it was intended "to secure Employee's

---

[1] Paguirigan is currently on appeal to the Second Circuit. Paguirigan v. Prompt Nursing Empl. Agency, LLC, No. 19-cv-3494, (Jan. 21, 2020). Notably, the American Association of International Healthcare Recruitment has filed an amicus brief to ensure that the district court's decision was "not misconstrued to improperly chill the ability of professional international recruiters to enter into contracts, including good faith liquidated damages clauses, in order to successfully recruit educated healthcare professionals for employment in the United States." See id., ECF No. 60, Br. for Amicus Curiae American Association of International Healthcare Recruitment In Support of Neither Party at 1. Such misconstruction is precisely what NYSNA is demanding—that this Court find a TVPA violation solely based on an employment contract with a foreign-recruited nurse containing a good-faith liquidated damages clause.

performance of the Employment Term." Id. at *7.  Here, the provision was required to ensure the "repay[ment of] the placement fees incurred by [Albany Med] . . . upon the occurrence of [a recruited RN's] termination for cause . . . or resignation."  Compl. at ¶ 25.[2]  The plaintiffs in Paguirigan were also issued a separate document showing that the fees designated for repayment in the liquidated damages provision amounted to only $3,685, whereas the liquidated damages provision required the repayment of up to $25,000.  Paguirigan, 2019 U.S Dist. LEXIS 165587 at * 8.  Additionally, the defendant in Paguirigan continued to seek enforcement of the liquidated damages provision against nurses for years after it was declared unenforceable by the Nassau County Supreme Court.  Id. at *55.  The defendant also failed to pay nurses the prevailing wage as required by their contracts, sued nurses who resigned for $250,000 in punitive damages for tortious interference, filed professional disciplinary actions against resigning nurses that resulted in no action after investigation by the New York State Education Department, and even sought to have nurses criminally prosecuted for endangering the welfare of a child and endangering the welfare of a physically disabled person due to their resignations.  Id. at *10, 21, 47.  It is under these facts that the court found that the defendant had violated the TVPA, and not merely the "basic fact[]" that the employment contracts at issue contained a liquidated damages provision, as NYSNA would have the Court believe.  See Pl.'s Br. at 17.

---

[2] A contract is not an unlawful penalty merely because it operates in a way that encourages parties to comply with their contractual obligations "so long as [the liquidated damages] are not grossly out of scale with foreseeable losses."  Bates v. Adv. USA, Inc. v. 498 Seventh, LLC, 7 N.Y.3d 115, 120 (2006).  NYSNA does not even argue that it has alleged facts sufficient to demonstrate that the costs recoverable by Albany Med pursuant to the liquidated damages provision are "grossly out of scale" with its foreseeable losses or that its damages were ascertainable at the time the contracts were executed; therefore it cannot demonstrate that the provision is an unenforceable penalty.  "It is 'not material' to the analysis whether the parties' agreement labels the provision one of 'liquidated damages' . . . or whether, instead, the contract calls it a penalty.  Spirit Locker, Inc. v. EVO Direct, LLC, 696 F. Supp. 2d 296, 304 (E.D.N.Y. 2010) (quoting Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., 41 N.Y.2d 420 (1977)).

2

In fact, none of the cases relied upon by NYSNA involved allegations of forced labor solely based on the existence of a liquidated damages provision.  In <u>Javier v. Beck</u>, No. 13-cv-2926, 2014 U.S. Dist. LEXIS 95594 (S.D.N.Y. July 3, 2014), the defendant promised the plaintiff a job as a physical therapy rehab manager, but instead forced him to work as a dishwasher, cook and delivery boy, paid him less than half of his contractual wage, and "threatened to enforce a $15,000 confession of judgment if he left their employ, failed to report for work, or challenged the legality of their conduct."[3]

In <u>United States v. Dann</u>, 652 F.3d 1160 (9th Cir. 2011), the plaintiff was a nanny who was told that she would have to repay her employer $8,000 if she left, had her passport confiscated, was forced to work sixteen hours a day without pay and to sleep on the floor, was not allowed to leave the apartment or speak to others, was regularly insulted, and was threatened that the children that she cared for would be harmed if she left.

In <u>Mairi Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.</u>, 790 F. Supp. 2d 1134 (C.D. Ca. 2011), the plaintiffs paid an initial recruitment fee, but, after the recruiter had their passports, they were fraudulently told they needed to pay a second, larger recruitment fee, and were also threatened with deportation.

In <u>Macolor v. Libiran</u>, No. 14-cv-4555, 2016 U.S. Dist. LEXIS 405666 (S.D.N.Y. Mar. 25, 2016), the plaintiff alleged that he signed a contract entitling him to a position as a physical therapist earning $31.13 per hour, but was instead forced to volunteer for a period of time, and was

---

[3] NYSNA again grossly mischaracterized the facts of <u>Javier</u> asserting that the plaintiff was employed as a physical therapy aid instead of a manager, while ignoring the facts that he was forced to work as a dishwasher, cook and delivery boy, and that he was paid less than half his contractual rate.

never given full-time employment as promised.  Nevertheless, the defendant threatened to enforce the contract's $20,000 liquidated damages provision if he left.  Id. at * 7-8.

In Carter v. Paschall Truck Lines, Inc., 324 F. Supp. 3d 900 (W.D. Ky. 2018), the plaintiffs alleged that they were forced to continue working for an employer who regularly paid them less than the minimum wage due to a liquidated damages provision that could result in over $100,000 in damages.

In Francis v. Apex USA, Inc., 406 F. Supp. 3d 1206 (W.D. Ok. 2019), the defendants charged the plaintiffs recruitment fees that were "intentionally hidden from Plaintiffs and staggered so that Plaintiffs felt compelled to continue paying the required fees in fear of losing the previously paid fees." After beginning their employment, plaintiffs were not paid as promised and were threatened with physical harm and deportation if they complained about wages and working conditions.

In David v. Signal Int'l, LLC, 37 F. Supp. 3d 822 (E.D. La. 2014), the defendants allegedly "knowingly made false promises and representations" regarding the work opportunities offered and forced the plaintiffs to live in "deplorable conditions" after requiring them to pay numerous recruiting expenses.

Accordingly, none of the cases relied upon by NYSNA would support its claim that Albany Med violated the TVPA simply due to the terms of its employment contracts with the recruited RNs.  In fact, the Nunag-Tanedo court cautioned that this could **not** constitute a violation of the TVPA:

> After the worker joins the program and begins employment, the worker becomes unhappy.  But if the worker quits, awaiting the worker is a trip home with a massive amount of debt that will be impossible to repay.  Working in the program is the only way to repay the loan.  Is this forced labor? Fraud? No. It is a bargained-for exchange.  Despite the worker's unhappiness, the terms and costs of the program were known, and the worker voluntarily obtained the loan to join the program.  The

3489424.5 2/3/2020

worker's eventual discontent does not transform the valid contract with the recruiters into something illegal.

790 F. Supp. 2d at 1137.  Here, the recruited RNs voluntarily agreed to a three-year term of employment and were aware before signing that they would be required to repay Albany Med's recruiting costs in the event of an early resignation.  Compl. ¶ 15.  They cannot now successfully claim that they were subjected to forced labor in violation of the TVPA simply because they later became unhappy or wished to pursue other opportunities after voluntarily agreeing to a three-year term of employment.

Even <u>Paguirigan</u> does not support NYSNA's outlandish position.  The <u>Paguirigan</u> court held that "of course, there is no prohibition against defendants placing a valid liquidated damages provision in their contracts."  2019 U.S. Dist. LEXIS 165587 at *49.  Thus, the case principally relied upon by NSYNA directly contradicts NYSNA's argument that it does not matter that the liquidated damages provision is enforceable, and that Albany Med could be liable for violating the TVPA's forced labor provision simply by incorporating a lawful liquidated damages provision in its employment contracts.  If NYSNA's logic applied, then employers would be guilty of violating the TVPA's forced labor provision every time that employees subject to an employment contract containing any sort of repayment provision decided that they wanted to leave their employment before the end of the contract term, which is clearly an absurd result not contemplated by the TVPA.

NYSNA further asserts that Albany Med's argument that NYSNA has not alleged facts sufficient to show that the liquidated damages provision an unenforceable penalty is "premature" and should not be decided at the motion to dismiss stage.[4]  In doing so, NYSNA has not even

---

[4] The case relied upon by NYSNA for this position is also wholly inapplicable.  In <u>LG Capital Funding LLC v. Aim Exploration, Inc.</u>, No. 17-cv-3118, 2018 U.S. Dist. LEXIS 147411 at * 13 (S.D.N.Y. Aug. 29, 2018), the court held that the issue of whether the liquidated damages provision

3489424.5 2/3/2020

attempted to argue that it has alleged facts that could establish that the provision is an unenforceable penalty, apparently necessitating its failed argument that even a valid, lawful contract provision, on its own, could serve as the basis of a forced labor violation.

NYSNA also does not claim that the language contained in the employment contracts regarding the potential immigration consequences of early termination was anything more than an accurate appraisal of the law.  Such a statement cannot constitute a coercive threat of serious harm under the TVPA.  See Saraswat v. Business Integra, Inc., No. 15-cv-4680, 2019 U.S. Dist. LEXIS 70054 at * 26 (E.D.N.Y. Apr. 25, 2019) ("Rather, the possibility of deportation was an 'adverse but legitimate consequence[]' of Plaintiff's terms and conditions of employment with BI, and informing Plaintiff that such an outcome could result was not 'force' or 'coercion' as contemplated by the TVPRA."(internal citation omitted)).  NYSNA argues to the contrary, citing Javier and claiming that the court there held that an otherwise truthful statement about potential immigration consequences "was a sufficiently coercive statement, *in light of the circumstances*, to set forth a TVPA claim."  Pl.'s Br. at 21 (emphasis supplied).  However, the "circumstances" NYSNA omits were that the defendant promised the plaintiff a job as a physical therapy manager paying him $35.53 per hour, and then threatened to withdraw his visa application if he refused to work as a cook and dishwasher where he earned less than $15 per hour.  Javier v. Beck, 2014 U.S. Dist. LEXIS 95594 at *18.  Nothing of the sort has been alleged here.

NYSNA also argues that there were other threats that were allegedly made to some of the recruited RNs.  However, NYSNA's claim seeks declaratory and injunctive relief finding that

---

was an unenforceable penalty could not be resolved at the per-answer motion to dismiss stage because, in that case, it constituted an affirmative defense to the claim asserted.

3489424.5 2/3/2020

Albany Med violated the TVPA with respect to all of the recruited RNs due to the terms of their employment contracts.  Thus, those allegations are not supportive of the claim asserted.[5]

NYSNA's claim fails for the additional reason that it has not alleged facts sufficient to show that each of the recruited RNs was subjectively caused to provide forced labor due to the provisions of the contract.  Its assertion that it can reduce its pleading obligation and avoid proving the subjective/causation element of a TVPA claim simply by commencing an action on behalf of a group of recruited RNs fails for reasons set forth more fully below.

For these reasons, NYSNA has failed to plausibly allege facts stating a TVPA claim upon which relief can be granted, and the complaint must be dismissed.

**II.    NYSNA Lacks Standing to Bring this Action**

NYSNA concedes that it does not have organizational standing and relies solely on a claim of associational standing.

**a.    The Plain Language of the TVPA Precludes NYSNA from Bringing a Claim Grounded on Associational Standing**

In N.Y. Metro Area Postal Union v. Potter, No. 00-cv-8538, 2003 U.S Dist. LEXIS 4904 (S.D.N.Y. March 31, 2003), the court held that the union was statutorily precluded from bringing a claim on behalf of its members pursuant to the FMLA, because claims under the FMLA could only be commenced by eligible employees.  Analogously, the TVPA specifies that civil claims can only be maintained by "[a]n individual who is a victim of a violation" or by "the attorney general of the State, as parens patriae."  18 U.S.C. § 1595(a) and (d).  NYSNA is therefore statutorily

---

[5] This is also demonstrative of how the individual participation of each of the recruited RNs is necessary, as the circumstances surrounding each of their recruitment and employment differed. In its complaint, NYSNA also asserts numerous allegations specific to individual recruited RNs or smaller groups of recruited RNs, and its reliance on such allegations further demonstrates that individual participation is required to establish its claims, preventing it from bringing these claims based on its assertion of associational standing, as discussed more fully below.

3489424.5 2/3/2020

precluded from bringing a claim under the TVPA on behalf of the recruited RNs because the statute specifies that civil actions may be commenced only by individuals who are victims of violations of the statute, just as the FMLA precluded the union's claims in Potter where the statute specified that only eligible employees had standing to bring such claims.

In opposition, NYSNA relies primarily on Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev. Inc., 448 F.3d 138 (2d Cir. 2006).  In that case, the statute provided that "any person may commence a civil action" pursuant to its terms.  Id. at 152 (emphasis supplied).  Thus, Downtown Dev. is inapposite because the statute at issue did not restrict the class of persons with standing to commence an action, unlike the FMLA in Potter or the TVPA here, and NYSNA's argument therefore fails.

       **b.**     **NYSNA Lacks Associational Standing Because Individualized Proof Is Required**

To satisfy the associational standing test, a plaintiff is required to demonstrate that "'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'"  Bano v. Union Carbide Corp., 361 F.3d 696, 713 (2d Cir. 2004) (quoting Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977)).  NYSNA presumably chose to bring a TVPA claim, as opposed to a state-law contract claim, in an attempt to make headlines and gain leverage during the ongoing collective bargaining negotiation.  In doing so, it has brought a claim requiring individual participation, as it must prove not only that the liquidated damages provision constitutes an unenforceable penalty that would have coerced a reasonable person to provide labor unwillingly under the circumstances, but that each recruited RN was subjectively coerced, because of the liquidated damages provision, to provide labor for Albany Med.  United States v. Rivera, 799 F.3d 180, 186-87 (2d Cir. 2015).  NYSNA therefore cannot obtain a judgment that Albany Med subjected all of the recruited RNs—who actively sought out employment with Albany Med

and moved across the world to work there—to forced labor solely based on the terms of the parties' contracts without the participation of the individual recruited RNs.   Thus, NYSNA lacks associational standing to bring the claim.

There is no basis to support NYSNA's contention that it can avoid the subjective/causation element of the TVPA simply because the action is purportedly brought on behalf of all of the recruited RNs, none of whom are identified or named as a party in the action.  NYSNA's reliance on TVPA class action certification decisions is misplaced.  The showing required under Fed. R. Civ. P. 23(b), that common questions of law or fact predominate over questions affecting individuals, is fundamentally different than the associational standing requirement that neither the claim asserted nor the relief requested require individual participation.

Nevertheless, even in the class-action context, the court in Davis v. Signal Int'l, LLC, 2012 U.S. Dist. LEXIS 114247 at *74-79 (E.D. La. 2012) rejected the argument asserted here by NYSNA and denied class certification because it found that individual issues relating to the subjective aspect of the TVPA test predominated the class's claim.  The court held that a TVPA claim could not be determined solely based on the objective reasonable person standard, and that "the jury must still determine whether the victim was coerced subjectively to provide labor based on the defendant's threats."  Id. at *74.  The basis of the court's holding was the Supreme Court's decision in United States v. Kozminski, 487 U.S. 931 (1988).  The court noted that after Kozminski, the TVPA had expanded the types of coercion that could serve as the basis of a forced labor claim, but that the TVPA did not change the focus of forced labor claims to a consideration of only "the defendant's conduct without concern for whether the defendant's conduct was sufficient to make *the specific alleged victim* render labor involuntarily," nor did it "render the issue of consent irrelevant to a forced labor determination."  Id. at *70-71 (emphasis supplied).

3489424.5 2/3/2020

Here, regardless of whether common issues would predominate, the participation of the individual recruited RNs is required.  A TVPA violation cannot be established as to each of the recruited RNs that NYSNA claims to represent without a showing that each of them felt subjectively coerced into providing labor **because of** the liquidated damages provision,[6] and that they did not consent to providing labor without regard to that provision after actively seeking out employment with Albany Med, voluntarily executing the contracts after Albany Med expressly advised them in advance of the terms and conditions contained therein, and moving across the globe to secure employment with Albany Med.  NYSNA's claim that it can establish that Albany Med violated the TVPA with respect to each and every recruited RN absent any showing that they were actually coerced into unwillingly providing labor due to the provision in question defies logic.  Individual participation is undeniably required to establish that **IF** the liquidated damages provision constitutes an unlawful threat of serious harm, that each recruited RN would not have provided labor for Albany Med but for the existence of that provision.

NYSNA's argument that it has associational standing to maintain the claim because it is seeking declaratory and injunctive relief, as opposed to compensatory damages, is also misplaced.  The Second Circuit has dismissed multiple lawsuits pursuant to Fed. R. Civ. P. 12 for lack of associational standing under similar circumstances where individual participation was necessary to establish the claims asserted.

For example, in <u>Bano</u>, multiple organizations brought claims on behalf of residents of a village seeking monetary and equitable relief for personal injuries and property damage allegedly

---

[6] NYSNA does not allege that any of the recruited nurses are "members" of the union, only that it represents them for purposes of collective bargaining negotiations.  A recruited nurse is not automatically a "member" of the union upon the union's certification as the exclusive bargaining representative; rather, the nurse must agree to membership.

resulting from water contamination caused by the defendant. 361 F.3d at 702.  The court noted

that an association does not satisfy "the third prong of the <u>Hunt</u> test simply by requesting equitable

relief rather than damages," and that an organization lacks standing "[i]f the involvement of

individual members . . . is necessary, either because the substantive nature of the claim or the form

of relief sought requires their participation." <u>Id.</u> at 714-15.  The Second Circuit further held that,

"[a]lthough <u>Hunt's</u> third prong represents a prudential rather than a constitutional requirement for

standing, we see no reason to relax it where, in order for the organization to succeed in the lawsuit,

there must be participation by the members themselves." <u>Id.</u> at 715 (internal citation omitted).

Accordingly, the Second Circuit held that the organizational plaintiffs lacked associational

standing even to the extent that they sought reimbursement for medical monitoring on behalf of

village residents, as the individuals had to participate in the lawsuit to establish both that they were

exposed to the contaminating chemical and that there was a rational basis for their fear of

contracting an illness.  <u>Id.</u> at 715.  It further held that the organization's claims for remediation

failed because consideration would have to be given as to "each owner's actual and intended use

or uses of his or her land," as well as "individual assessments . . . as to the nature, breadth, and

severity of contamination." <u>Id.</u> at 715-716.

The Second Circuit also held that the Rent Stabilization Association ("RSA") lacked

standing to seek declaratory and injunctive relief on behalf of its members in contending that a

rent stabilization scheme was unconstitutionally administered in violation of the Takings Clause.

<u>Rent Stabilization Ass'n v. Dinkins</u>, 5 F.3d 591 (2d Cir. 1993).  Although RSA sought only

declaratory and injunctive relief, because the claim involved the application of the law to fact, an

individual inquiry was necessary to determine whether each individual landlord had actually

suffered a taking due to the alleged unconstitutional application, and RSA therefore lacked associational standing to bring the claim.  Id. at 596.

Instead of bringing a state-law contract claim to decide the enforceability of the liquidated damages provision, NYSNA chose to allege that Albany Med violated the TVPA with respect to each and every recruited RN due to the terms of the parties' employment contracts.  In doing so, it necessitated the participation of the individual recruited RNs in order to prevail on its substantive claim.  NYSNA is required to prove not only that the liquidated damages provision is an unenforceable penalty and that it constituted a threat of serious harm such that a reasonable person would have been coerced to provide labor under the circumstances, but also that all of the recruited RNs provided forced labor due to the liquidated damages provision, as opposed to providing labor consensually.  As such, individual participation is necessary and NYSNA cannot establish the third prong of the Hunt test. The complaint must therefore be dismissed because NYSNA lacks associational standing.

### III.   NSYNA Is Not Entitled to Declaratory or Injunctive Relief as a Matter of Law

NSYNA commenced this action seeking only "injunctive and declaratory relief" pursuant to the Trafficking Victims Protection Act ("TVPA") on behalf of the recruited RNs.  Compl. at ¶1. The complaint must be dismissed in its entirety because NYSNA lacks standing to seek either injunctive or declaratory relief.

Pursuant to 18 U.S.C. § 1595A(a), only "the Attorney General may bring a civil action in a district court of the United States seeking an order to enjoin" an alleged violation of the TVPA. As set forth in Albany Med's prior memorandum of law, NYSNA is precluded from seeking injunctive relief on behalf of the recruited RNs because the TVPA's legislative history does not provide any indication that it creates a private right of action on behalf of a union, let alone that it

provides a union with the power to seek injunctive relief, which is expressly allocated only to the Attorney General by the statute's plain language.[7]

NYSNA also cannot obtain declaratory relief on behalf of the nurses.  Actions for declaratory relief pursuant to the Declaratory Judgment Act ("DJA") must be brought by an "**interested party**."  28 U.S.C. § 2201(a) (emphasis added).  In its opposition, NYSNA asserts that there is "a substantial controversy over whether nurses are currently working under an illegal agreement," while failing entirely to address the fact that it lacks standing to bring a claim to declare the rights of the parties to a contract to which it has no interest.  NYSNA's failure to even raise an argument that it is an interested party as defined by the DJA is demonstrative of the fact that, because it lacks standing to enforce the underlying agreement, it also lacks standing to seek a declaration of the rights of the interested parties—in this case, Albany Med and the recruited RNs—which is fatal to its claim.  See Andrews v. Sony/ATV Music Publ'g, LLC, No. 15-cv-7544, 2017 U.S. Dist. LEXIS 27034 at * 19 (S.D.N.Y. Feb. 24, 2017).

Instead of addressing this fatal flaw, NYSNA instead erroneously relies on Paguirigan v. Prompt Nursing Empl. Agency LLC,  2019 U.S. Dist. LEXIS 165587.  NYSNA points out that nurses involved in that TVPA class action were able to sustain a claim seeking declaratory relief regarding the enforceability of a liquidated damages provision; however, that argument completely misses the point.  The nurses' standing to seek declaratory relief was not at issue in Paguirigan, as the nurses were obviously interested parties with respect to the contracts between them and their

---

[7] NYSNA acknowledged that the statute does not even impliedly create a private right of action for unions in any respect by conceding that it does not have organizational standing under the TVPA.  Although it is also clear that NYSNA lacks associational standing, even if it did not, the TVPA's civil injunction provision does not create a private right in any respect and limits the ability to seek injunctive relief to the Attorney General.  Thus, NYSNA is clearly not entitled to seek injunctive relief on behalf of the recruited RNs.

employer, and they therefore had standing to seek declaratory relief regarding their rights under the contract.  Here, NYSNA is not an interested party to the contracts between the recruited RNs and Albany Med—it has not even attempted to argue that it is—and it therefore lacks standing to maintain an action for declaratory relief under the DJA.  See Andrews, 2017 U.S. Dist. LEXIS 27034 at * 19.

The complaint must therefore be dismissed in its entirety, as NYSNA is not entitled to either the declaratory or the injunctive relief that it seeks.

## CONCLUSION

For the foregoing reasons, Albany Med respectfully submits that the court should dismiss NYSNA's complaint in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Dated: February 3, 2020                            BOND SCHOENECK & KING, PLLC

By:    /s/ Sanjeeve K. DeSoyza
       Nicholas J D'Ambrosio, Jr. (101449)
       Sanjeeve K. DeSoyza (514083)
       Nicholas P. Jacobson (519298)
*Attorneys for Defendant Albany Medical Center*
22 Corporate Woods Boulevard, Suite 501
Albany, New York 12211-2503
Telephone: (518) 533-3000
Email: ndambrosio@bsk.com
Email: sdesoyza@bsk.com
Email: njacobson@bsk.com