++UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THE NEW YORK STATE NURSES ASSOCIATION,

                              **Plaintiff,**

                  v.                                          1:19-CV-1265
                                                                                               (FJS/CFH)

**ALBANY MEDICAL CENTER,**

                              **Defendant.**
_____

APPEARANCES                                      OF COUNSEL

**COHEN, WEISS & SIMON, LLP**          **JOSEPH J. VITALE, ESQ.**
900 Third Avenue, 21st Floor              **EVAN HUDSON-PLUSH, ESQ.**
New York, New York 10022-4869       **MARIE B. HAHN, ESQ.**
Attorneys for Plaintiff

**BOND, SCHOENECK & KING, PLLC**   **NICHOLAS D'AMBROSIO, JR., ESQ.**
One Lincoln Center                           **NICHOLAS P. JACOBSON, ESQ.**
Syracuse, New York 13202                 **SANJEEVE K. DESOYZA, ESQ.**
      -and-
22 Corporate Woods Blvd., Suite 501
Albany, New York 12211
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

       The New York State Nurses Association ("Plaintiff") brought this action on behalf of the Filipino nurses that it represents who work at Albany Medical Center ("Defendant") for alleged violations of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589, *et seq*. *See generally* Dkt. No. 1, Compl.  Plaintiff claims that it is the exclusive collective

- 1 -

bargaining representative for Defendant's nurses, including eighty-four nurses who are part of a Philippines recruitment program and currently working for Defendant. *See generally id.* at ¶¶ 63-64. According to Plaintiff, these nurses are the "victims" of Defendant's alleged TVPA violations; but, notably, there are no named nurses as plaintiffs in this suit. *See generally id.* Focusing on this omission, Defendant moves to dismiss Plaintiff's complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See* Dkt. No. 13. Defendant additionally moves to dismiss Plaintiff's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See id.*

## II. BACKGROUND

Plaintiff alleges that Defendant recruited 582 nurses in the Philippines to migrate to the United States to work for it as registered nurses ("RNs"). *See* Dkt. No. 1 at ¶ 2.[1] According to Plaintiff, to enter Defendant's program, the recruited nurses were required to sign contracts obligating them to immediately pay up to $20,000 to Defendant should they resign their employment within three years of their start date (hereinafter referred to as "the liquidated damages provision"). *See id.* Plaintiff alleges that the nurses' contracts stated that Defendant would seek to automatically enter judgment against the nurses, without so much as a lawsuit, if they resigned and failed to immediately pay Defendant. *See id.*

Plaintiff further asserts that Defendant threatened to report the nurses to immigration authorities and subject them to deportation if they broke their contracts. *See id.* In addition to the liquidated damages provision and potential immigration consequences, Plaintiff also alleges

---

[1] Since this is a motion to dismiss, the Court has relied on the facts as alleged in Plaintiff's complaint and has presumed their truth for purposes of this motion.

that the nurses were provided living arrangements in unsafe neighborhoods without adequate security measures, were placed in medical units that did not correspond with their specialties and experience, and were paid less than their American counterparts who had lesser degrees and fewer years of experience. *See id.* at ¶¶ 18, 37, 38. Plaintiff contends that Defendant's threats of serious financial and other harm are just the type of worker exploitation that the forced labor provisions of the TVPA are designed to prevent. *See id.* at ¶ 2.

Based on these allegations, Plaintiff filed this action seeking (a) a declaration that the liquidated damages provision is unlawful under the TVPA, (b) an injunction preventing Defendant from enforcing the liquidated damages provision, and (c) an award of costs of the action and reasonable attorneys' fees. *See id.* at p. 13-14.

### III. DISCUSSION

**A.  Legal standards**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)). "Indeed, a challenge to the jurisdictional elements of a plaintiff's claim allows the Court 'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 289 F. Supp. 2d 392, 399 (S.D.N.Y. 2003) (quotation and other citation omitted), *aff'd*, 403 F.3d 76 (2d Cir. 2005).

On the other hand, a motion to dismiss pursuant to Rule 12(b)(6) "challenges only the 'legal feasibility' of a complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544,] 570, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations … a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] …" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). When making its decision, this court must "accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff." *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 235 (2d Cir. 2008) (citing *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (per curiam)).

### B. The TVPA

The TVPA criminalizes peonage, slavery, and human trafficking. *See generally* 18 U.S.C. § 1581, *et seq.* Congress added a civil remedy for victims of these crimes when it updated the Trafficking Victims Reauthorization Act in 2003. *See id.* at § 1595; *see also* P.L.

108-193, § 4(a)(4)(A) (enacted Dec. 19, 2003).  In this case, Plaintiff aims to hold Defendant civilly liable for alleged violations of the TVPA's forced labor provisions.  *See* Dkt. No. 1 at ¶¶ 65-69.

"To establish a claim of forced labor under TVPA § 1589(a), plaintiff must show that defendants knowingly provided or obtained her labor or services by means of 'serious harm or threats of serious harm,' 'the abuse or threatened abuse of law or legal process,' or 'any scheme, plan or pattern intended to cause [her] to believe that, if [she] did not perform such labor or services, that [she] or another person would suffer serious harm or physical restraint.'" *Paguirigan v. Prompt Nursing Emp't Agency LLC*, No. 17-cv-1302 (NG) (JO), 2018 U.S. Dist. LEXIS 156331, *20-*21 (E.D.N.Y. Sept. 12, 2018) (motion for summary judgment) (quoting 18 U.S.C. § 1589(a)) (footnote omitted).  "The 'threat of financial harm constitutes serious harm within the meaning of the TVPA.'"  *Id.* (citing *Paguirigan* [*v. Prompt Nursing Emp't Agency LLC*,] 286 F. Supp. 3d [430,] 438 [(E.D.N.Y. Dec. 20, 2017)] (motion to dismiss) (citing *United States v. Dann*, 652 F.3d 1160, 1170-1171 (9th Cir. 2011)); *accord Javier v. Beck*, No. 13-CV-2926, 2014 U.S. Dist. LEXIS 95594, *15-*16 (S.D.N.Y. July 3, 2014)).

Notably, the TVPA's civil remedy provision permits "[a]n individual who is a victim of a violation of this chapter" to "bring a civil action against the perpetrator … in an appropriate district court of the United States" and the victim "may recover damages and reasonable attorneys fees."  18 U.S.C. § 1595(a). The TVPA further provides, "[w]henever it shall appear that any person is engaged or is about to engage in any act that constitutes or will constitute a violation of this chapter … the Attorney General may bring a civil action in a district court of the United States seeking an order to enjoin such act."  18 U.S.C. § 1595A(a).

Defendant initially argues that Plaintiff does not have associational standing or standing under the plain language of the TVPA's civil remedy provision to allege violations on behalf of the nurses.[2]  *See* Dkt. No. 13-1, Def's Memorandum in Support, at 8-15.  Additionally, Defendant contends that Plaintiff's complaint fails to state a claim upon which relief can be granted.  *See id.* at 18-26.  The Court addresses each of these arguments in turn.

### C. Associational standing

The first issue that Defendant asks the Court to address is whether Plaintiff has associational standing to bring a private cause of action against it pursuant to the TVPA.  *See generally* Dkt. No. 13-1 at 8-15.  To have associational standing, a plaintiff must show that it meets all of the elements required in the "*Hunt* test."  According to the Supreme Court in *Hunt*, "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).  The parties only dispute whether Plaintiff can satisfy the third prong of this test, *i.e.*, whether litigation of Plaintiff's TVPA claim would require the individual nurses' participation.

Defendant argues that, to determine if the TVPA has been violated, courts must apply a hybrid test that includes both subjective and objective components.  *See* Dkt. No. 13-1 at 8.  Defendant contends that the hybrid test requires proof that (1) "the threats of harm were

---

[2] Defendant also contends that Plaintiff does not have organizational standing; however, Plaintiff does not contest this.  *See* Dkt. No. 13-1 at 9; Dkt. No. 16, Pl's Memorandum in Opposition, at 13 n.2.

sufficient such that the specific alleged victim was coerced to provide labor or services," and (2) "the threats would have been sufficient to make 'reasonable people of the same background and in the same circumstances to feel coerced.'" *See id.* (quoting *United States v. Rivera*, 799 F.3d 180, 186-87 (2d Cir. 2015); *see also Saraswat v. Business Integra, Inc.*, No. 15-CV-4680, 2019 U.S. Dist. LEXIS 70054, *29-*30 (E.D.N.Y. Apr. 25, 2019)). To satisfy the subjective element of this hybrid test, Defendant asserts, Plaintiff must show individualized proof. *See id.* at 14. Thus, Defendant contends that Plaintiff cannot satisfy the third prong of the *Hunt* test because it would have to establish that each and every one of the recruited nurses that it represents subjectively believed that they had been coerced into providing labor for Defendant as a result of the employment contracts. *See* Dkt. No. 13-1 at 15 (citing *N.Y. Metro Area Postal Union v. Potter*, No. 00-CV-8538, 2003 U.S. Dist. LEXIS 4904, *9-*10 (S.D.N.Y. Mar. 31, 2003)).

  In response, Plaintiff asserts that individualized, subjective proof is not needed to prove its TVPA claim because a TVPA claim is based only on an objective reasonable person standard. *See* Dkt. No. 16, Pl's Memorandum in Opposition, at 15. However, even if subjective proof were necessary, Plaintiff argues that would not prevent it from satisfying the third prong of the *Hunt* test. Plaintiff contends that the third prong of the *Hunt* test does not preclude *some* individual participation. *See id.* at 14 (citing *Emples. Committed for Justice v. Eastman Kodak Co.*, 407 F. Supp. 2d 423, 434 (W.D.N.Y. 2005); *Am. Booksellers Ass'n, Inc. v. Random House, Inc.*, No. 96 Civ. 0030, 1996 U.S. Dist. LEXIS 12775 (S.D.N.Y. Sept. 4, 1996)). Furthermore, Plaintiff argues that courts are typically reluctant to dismiss a complaint at the outset of the litigation for failure to satisfy the third prong of the associational standing test. *See id.* (citing *Emples. Committed for Justice*, 407 F. Supp. 2d at 435) (other citations omitted).

The Court disagrees with Defendant's contention that Plaintiff must prove that each nurse felt "subjectively coerced into providing labor because of the liquidated damages provision, and that they did not consent to providing labor without regard to that provision …" *See* Dkt. No. 20, Def's Reply, at 12, 14 (citing *Rivera*, 799 F.3d at 186-87) (emphasis and footnote omitted). Defendant's position mischaracterizes the Second Circuit's ruling in *United States v. Rivera*. In that *criminal* case, the trial court gave the jury a purely subjective charge, focusing only on the alleged victim's beliefs to prove that the defendant had violated the TVPA. *See United States v. Rivera*, 799 F.3d 180, 186 (2d Cir. 2015). The Second Circuit held that the trial court erred; and, instead, it should have charged the jury that "the Government must prove that a reasonable person of the same background and circumstances would have also felt coerced" and that "[t]he correct standard is a hybrid: it *permits* the jury to consider the particular vulnerabilities of a person in the victim's position but also *requires* that her acquiescence be objectively reasonable under the circumstances." *Id.* at 186-87 (citing 2-47A Modern Federal Jury Instructions—Criminal P 47A.03, Instruction 47A-21) (emphasis added). The Second Circuit thus made clear that the factfinder *may* consider the victim's subjective beliefs; but it is not mandatory.

For further support that a reasonable person standard applies – and thus it is possible for Plaintiff to satisfy the third prong of the *Hunt* test while claiming a TVPA violation – the Court points to *Paguirigan v. Prompt Nursing Emp't Agency LLC*. Upon reviewing the plain language of the TVPA, the *Paguirigan* court noted that "[t]he TVPA's explicit statutory language makes clear that a 'reasonable person' standard applies in determining whether a particular harm (or threat of harm) is sufficiently serious to compel an individual to continue performing labor or services." *Paguirigan v. Prompt Nursing Emp't Agency LLC*, No. 17-CV-

1302, 2018 U.S. Dist. LEXIS 156331, *21 (E.D.N.Y. Sept. 12, 2018) (motion for summary judgment). Thus, the court held, "defendant's contention that adjudication of plaintiff's claims would require an individualized consideration of each putative class member is mistaken." *Id.* at *21-*22. "The question is not whether each individual felt compelled to continue her employment as a result of defendants' conduct, but whether a reasonable person of the same background and in the same circumstances would find that conduct a threat of serious harm sufficient to compel continued work." *Id.* at *22. Thus, the Court finds that the TVPA's reasonable person standard is clearly reconcilable with the third prong of the *Hunt* test.

With respect to that prong, the Court looks to *Empls. Committed for Justice v. Eastman Kodak Co*. In that case, the court held, "'[i]n determining whether the last prong of [the *Hunt*] test is met, the result often turns upon whether the claim advanced by the association on behalf of its members is for damages.'" *Empls. Committed for Justice v. Eastman Kodak Co.*, 407 F. Supp. 2d 423, 433 (W.D.N.Y. 2005) (quoting *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 207 (D.N.J. 2003)). Here, Plaintiff does not seek to recover monetary damages; instead, it seeks only to obtain declaratory and injunctive relief. *See generally* Dkt. No. 1 at 13-14. Under *Empls. Committed for Justice*, this means that Plaintiff's requested relief does not bar it from associational standing. *See id.* (citing [*Clark*,] 213 F.R.D. at 207) ("It is almost a bright-line rule that requests by an association" for equitable relief do not require individual participation by association members[.])).

The court in *Empls. Committed for Justice* also noted that, at the motion to dismiss stage of the proceedings, it is difficult to predict the extent to which the plaintiff will rely on its members to prove its claims. *See id.* According to the court, "[t]he third prong of *Hunt* does not require dismissal for lack of standing simply because several members of an association

seeking injunctive relief testify or participate in a lawsuit." *Empls. Committed for Justice*, 407 F. Supp. 2d at 434.

Finally, as Plaintiff correctly noted, "'an association may assert a claim that requires participation by *some* members.'" *Id.* (quoting *Hospital Council of Western Pennsylvania v. City of Pittsburgh*, 949 F.2d [83,] 89 [(3d Cir. 1991)] (other citations omitted)). As the Supreme Court ruled in *Warth v. Seldin*, "'[s]o long as the nature of the claim and of the relief sought does not make the individual participation of *each injured party* indispensable to proper resolution of the cause, the association may be an appropriate representative of its members entitled to invoke the court's jurisdiction.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. [490,] 511, 955 S. Ct. 2197 [(1975)] (emphasis added)).

Accordingly, the Court adopts the rules set out in *Paguirigan* and *Empls. Committed for Justice* to find that individual consideration of the nurses' claims is not necessary to prove that Defendant violated the TVPA under an objective reasonable person standard for purposes of obtaining equitable relief. As such, the Court finds that Plaintiff satisfies the third prong of the *Hunt* test; and, therefore, it has associational standing to bring its TVPA claim on behalf of the nurses.

### D. Plaintiff's cause of action under the plain language of the statute

Defendant next asserts that the TVPA expressly provides that only individual victims and state Attorneys General may bring actions for civil remedies or seek injunctive relief; and, consequently, Plaintiff does not have a cause of action under the plain language of the statute. *See* Dkt. No. 13-1 at 9-10. In response, Plaintiff contends that suits brought by union representatives are not explicitly precluded under the TVPA; and, therefore, they must be

- 10 -

implicitly permitted.  *See generally* Dkt. No. 16 at 18-10.  The Court finds that Plaintiff's argument fails in the face of the relevant caselaw.

This inquiry – whether the plain language of the statute grants a plaintiff a civil remedy – was formerly known as "statutory standing."  *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016).  The Supreme Court recently clarified that misnomer; "what has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'"  *Id.* (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, --- U.S. ---, 134 S. Ct. 1377, 1387, 188 L. Ed. 2d 392 (2014)).  In fact, "[t]his inquiry 'does not belong' to the family of standing inquiries … because 'the absence of a valid … cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional *power* to adjudicate the case.'"  *Id.* (quoting [*Lexmark,* 134 S. Ct.] at 1386 n.4 (emphasis in original) (internal quotation marks omitted)); (citing *Nw. Airlines, Inc. v. Cnty. of Kent*, 510 U.S. 355, 365, 114 S. Ct. 855, 127 L. Ed. 2d 183 (1994) ("The question whether a federal statute creates a claim for relief is not jurisdictional.")).  Thus, the proper question is whether Plaintiff has a cause of action under the plain language of the TVPA.

In *Am. Psychiatric Ass'n*, the plaintiff psychiatrists sought to represent their patients in enforcing an alleged violation of the Employee Retirement Income Security Act ("ERISA").  *See generally id.* at 359-60.  The court noted that civil actions under ERISA may be brought "'by a participant, beneficiary, or fiduciary.'"  *Id.* at 360 (quoting 29 U.S.C. § 1132(a)(3)).  The psychiatrists did not, nor could they, argue that they were participants, beneficiaries, or fiduciaries under ERISA.  *See id.*  Instead, the psychiatrists claimed that they could "stand in the

- 11 -

shoes of their patients and thus have their patients' cause of action under the statute." *Id.* The Second Circuit rejected this argument. *See id.*

The *Am. Psychiatric Ass'n* court pointed to the Supreme Court's effort to distinguish "the '"prudential" branch of standing'—which includes the doctrine of third-party standing as an exception to 'the general prohibition on a litigant's raising another person's legal rights'—from the requirement that the plaintiff be part of the 'particular class of persons' to whom Congress has given 'a right to sue under [the] substantive statute.'" *Id.* (quoting [*Lexmark*], 134 S. Ct. at 1386-87 (internal quotation marks omitted)). The Second Circuit summarized *Lexmark* as "teach[ing] that we cannot expand the congressionally-created statutory list of those who may bring a cause of action by importing third-party prudential considerations." *Id.* Thus, the court found, "[t]he psychiatrists here lack a cause of action under ERISA's § 502(a)(3), irrespective of whether they may stand in the shoes of their patients in other matters." *Id.* (citing [*Connecticut v.*] *Physicians Health Servs.* [*of Conn., Inc.*,] 287 F.3d [110,] 120 [(2d Cir. 2002)]).

To ensure that the Court is not expanding the congressionally-created list of those who can civilly enforce the TVPA, it relies on a principle of statutory construction reflecting the ancient maxim "*expressio unius est exclusio alterius.*" *See Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974). Essentially, this means, "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *Id.* Furthermore, "'[w]hen a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.'" *Id.* (quoting *Botany Worsted Mills v. United States*, 278 U.S. 282, 289, 49 S. Ct. 129, 132, 73 L. Ed. 379 (1929)); *see also, e.g., Cashman v. Dolce Int'l/Hartford*, 225 F.R.D. 73, 83 (D. Conn. 2004) (holding, in

the context of the WARN Act (29 U.S.C. § 2101 *et seq.*), that "by explicitly *including* unions and local governments within the scope of the term 'person,' Congress can be deemed to have *excluded* all others not expressly mentioned, such as the State [Department of Labor] Plaintiffs." (citing, *e.g.*, *United States v. Vonn*, 535 U.S. 55, 65, 122 S. Ct. 1043, 152 L. Ed. 2d 90 (2002) ("[E]xpressing one item of [an] associated group or series excludes another left unmentioned."))).

Here, Plaintiff claims that Defendant violated 18 U.S.C. § 1589(a), the statute that prohibits forced labor, by "knowingly obtaining and providing the labor and services of RNs in the Program by, among other things, threats of serious financial, psychological, and/or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or continue performing labor or services in order to avoid incurring that harm." *See* Dkt. No. 1 at ¶ 67; *see also* 18 U.S.C. § 1589(a). Plaintiff further alleges that Defendant violated 18 U.S.C. § 1590, the statute that prohibits trafficking with respect to peonage, slavery, involuntary servitude, or forced labor, by "knowingly recruiting, providing, or obtaining any person for labor or services in violation of 18 U.S.C. § 1589." *See* Dkt. No. 1 at ¶ 69; *see also* 18 U.S.C. § 1590.

As described above, the TVPA provides a civil remedy for "[a]n individual who is a victim of a violation of this chapter" who seeks to "recover damages and reasonable attorneys fees." 18 U.S.C. § 1595(a). The express language also permits the Attorney General to seek an injunction when it appears that a person "is engaged or is about to engage in any act that constitutes or will constitute a violation of [the TVPA] …" *See id.* at 1595A(a). Looking at the plain language of the statute, it does not explicitly list a union representative as a party that can seek a civil remedy for violations of the TVPA. Thus, when applying the above-stated principle

of statutory construction, the inverse becomes true; *i.e.*, anyone not expressly permitted to bring a cause of action under the TVPA cannot bring a civil suit to recover for violations of it. The courts' rulings in *Lexmark* and *Am. Psychiatric Ass'n* further support the Court's interpretation that unions do not have a cause of action under the TVPA. Therefore, despite the fact that Plaintiff may have associational standing to represent the recruited nurses, the Court finds that the plain language of the statute does not give Plaintiff, as a union, power to civilly enforce the TVPA as pled. Accordingly, the Court must dismiss Plaintiff's complaint for failure to state a cause of action. However, the Court does so **without prejudice** to provide Plaintiff with an opportunity to file a motion for leave to file an amended complaint. *See Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 91 (3d Cir. 2003).

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction, *see* Dkt. No. 13, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim, *see* Dkt. No. 13, is **GRANTED without prejudice** to provide Plaintiff with an opportunity to file a motion for leave to file an amended complaint. Plaintiff must file any such motion within **30 days** of the date of this Memorandum-Decision and Order. If Plaintiff does not file such motion within 30 days of the date of this Memorandum-Decision and Order, the dismissal without prejudice will automatically convert to dismissal **with prejudice**; and, at that

time, the Clerk of the Court shall enter judgment in favor of Defendant and close this case without further Order of this Court.

**IT IS SO ORDERED.**

Dated: July 15, 2020
      Syracuse, New York

                                            Frederick J. Scullin, Jr.
                                            Senior United States District Judge